## JEREMIAH WHITEHEAD *versus* BENJAMIN F. VARNUM.

If a debtor imprisoned on execution is admitted to the liberties of the yard upon giving a bond with a surety approved by only one justice of the peace, the gaoler is liable for an escape; for the bond is not conformable to the statutes of 1784, c. 41, § 8 and 1811 c. 167, § 1, unless the surety is approved by the creditor or by two justices of the peace.

In an action of debt for an escape, it was *held*, that the plaintiff was entitled to interest from the date of the writ, and not from the time of the escape.

UPON a case stated it appeared that this was an action of debt against the sheriff of Middlesex, for the alleged escape of one Loring, who had been committed on execution. Loring was admitted to the liberty of the yard, upon giving bond to the defendant's deputy, the gaoler, conformably to the statutes, except that the surety in the bond was not approved by the plaintiff, and approved by one only, instead of two justices of the peace *quorum unus*. If upon these facts the plaintiff could sustain his action, the defendant was to be defaulted, and judgment was to be rendered for such sum as the Court should direct ; otherwise the plaintiff was to be nonsuit.

The action was commenced before the enactment of *St.* 1833, c. 134, abolishing the action of debt for an escape.

*Wilde*, for the plaintiff, insisted, that to bring the bond within the statutes, the surety should have been approved either by the creditor, or by two justices of the peace. *St.* 1784, *c.* 41, § 8 ; 1811, *c.* 167, § 1.

*Buttrick*, *contrà*, argued that the statute provision for an approval of the surety, was not designed for the benefit of the creditor, but to protect the debtor from oppression by the gaoler ; and that if the gaoler was willing to accept the bond

*Oct.* 19th.

Whitehead
v.
Varnum.

April term
1834.

offered, no approval of the surety was necessary. *Bartlett* v. *Willis*, 3 Mass. R. 86 ; *Cargill* v. *Taylor*, 10 Mass. R. 208 Anc. Chart. 565 ; 2 Inst. 386 ; Com. Dig. *Parliament*, *R* 16. The clause in *St.* 1784, *c.* 41, that two justices of the peace " shall be called to approve," &c., is impliedly repealed by *St.* 1811, *c.* 85. *Ellis* v. *Paige*, 1 Pick. 43.

PUTNAM J. delivered the opinion of the Court.

The defendant is answerable in this action, unless his deputy took a bond conformable to the statute, when he permitted the debtor, who was imprisoned, to have the liberty of the yard.

The *St.* 1784, *c.* 41, § 8, provides " that such prisoner shall give bond with sufficient surety or sureties, in double the sum for which he is imprisoned, conditioned, that from the time of executing such bond, he will continue a true prisoner in the custody of the gaoler, and within the limits of the prison, until he shall be lawfully discharged, without committing any manner of escape ; and in order to prevent any oppression under pretence of the surety or sureties being insufficient, two disinterested justices of the peace, *quorum unus*, shall be called to approve of the surety or sureties, and the same being approved by them, shall be deemed sufficient."

In the case at bar, the bond has been approved by only one justice of the peace *quorum unus*. The *St.* 1811, *c.* 85, leaves the statute of 1784, *c.* 41, in force, but makes it lawful for the prisoner to enter upon any estate within the exterior bounds of the yard, without breach of the condition. The provision in the statute first cited, remained unaffected by the other statute cited.

The *St.* 1811, *c.* 167, provides for the liberty of the yard, if the debtor shall give bond, &c., to be approved by the creditor or two justices *quorum unus*.

In the case at bar there has not been any approval of the bond by the creditor.

The result is, that before the statute last cited, the law required the bond to be approved by two justices *quorum unus*, and afterwards, that there should be either such an approval or the consent of the creditor himself.

It is very clear, therefore, that the bond was not conformable to the law, and that the liberty given to the prisoner without such bond, is an escape.

This action is debt for the escape, and the measure of damages, is the debt and costs.

According to the agreement of the parties, therefore, the defendant is to be defaulted.

*Buttrick* objected to the allowance of any interest. *Rawson v. Dole*, 2 Johns. R. 454.

*Per Curiam.* The plaintiff is entitled to interest, not from the time of the escape, but from the date of the writ.

Whitehead<br>*v.*<br>Varnum.

*Oct.* 17*th*,<br>1834.

---

## WILLIAM H. MAYO *et al. versus* HENRY FLETCHER.
## The Same *versus* DANIEL SHATTUCK.

Where a mortgager of leasehold premises reserves in the mortgage a right to remain in possession until breach of the condition, and he holds over; the law will not imply an assumpsit to pay rent to the mortgagee during the time of holding over and previous to an entry by the mortgagee.

The title to the premises in such case after a tender of performance made subsequently to the breach of the condition, cannot be tried in an action of assumpsit for rent alleged to have accrued during such holding over.

Such mortgagee, having never entered, cannot maintain trespass *quare clausum fregit* against a person entering and occupying by permission of the mortgager before condition broken and holding over after a breach.

THE case of *Mayo et al. v. Fletcher,* was trespass for breaking and entering the plaintiffs' dwellinghouse.

In the Court of Common Pleas it appeared, that in March 1831, Daniel Blaisdell assigned to the plaintiffs all his property, in trust for the benefit of his creditors. In pursuance of the trust the plaintiffs sold by public auction to Daniel Shattuck, all their right in certain land of which they were possessed for a term of years, and in a dwellinghouse, standing on land not owned by them, and gave him a deed of assignment indorsed upon the indenture of lease. Half of the purchase money was paid by Shattuck on receiving the deed, and for the residue (275 dollars) he gave his note to the plaintiffs, payable in four months, and at the same time executed and delivered to them a deed of mortgage as collateral security for the payment of the note according to its tenor. By the terms of the mortgage

Shattuck was to possess and occupy the premises until there should be a breach of the condition. Shattuck soon after took possession, and the defendant, by permission of Shattuck and as his tenant, occupied the premises from May 1831, to the time of the trial. The note in question was not paid at its maturity, but soon afterward the amount due upon it was regularly tendered by Shattuck to one of the plaintiffs, and was refused. No formal demand of payment of the note was made. At the expiration of one month from the maturity of the note, the plaintiffs demanded a month's rent of Shattuck, and a suit against him for such rent was pending at the time of the trial. Afterwards the plaintiffs gave regular notice in writing to Fletcher to quit the premises, and after the expiration of twenty-four days from giving the notice this suit was commenced. The plaintiffs never entered into the premises or had the actual possession of the same, after they became the mortgagees thereof. Fletcher knew of the existence and the general tenor of the mortgage, before he had notice to quit, and that the note was unpaid at its maturity. He also knew of the tender and refusal above mentioned. The premises were occupied by Blaisdell until a short time before the sale to Shattuck.

In the Court of Common Pleas held by *Williams* J., it was adjudged that the action could not be maintained; whereupon the plaintiffs filed exceptions.

The case of *Mayo et al.* v. *Shattuck* was assumpsit to recover one month's rent of the dwellinghouse above mentioned, alleged to have accrued after the breach of the condition of the mortgage. The facts before stated made a part of this case. No express promise to pay rent was pretended, but the plaintiffs relied on an implied promise or obligation. Shattuck claimed the dwellinghouse as his own property. In the Common Pleas *Williams* J. ruled that the action could not be maintained; to which decision the plaintiffs filed exceptions.

The cases were argued in writing by *W. Hilliard* —. *F. Hilliard* for the plaintiffs, and *Ames* for the defendants.

In the action against Shattuck it was contended on the part of the plaintiffs, 1. that payment of the note being neither made nor tendered on the 4th of September, 1831, the condition of the mortgage was then broken and the property in question

was forfeited to the plaintiffs without right of redemption. There is no right to redeem the leasehold, for it is personal estate. 4 Dane's Abr. 197 ; *Homes* v. *Crane*, 2 Pick. 607 ; *Parks* v. *Hall*, ibid. 206 ; Yelv. (Metcalf's edit.) 179 *a*, note ; 2 Bigelow's Dig. 187 ; 2 Bl. Com. 386 ; *Ex parte Gay*, 5 Mass. R. 419 ; *Montague* v. *Smith*, 13 Mass. R. 399 ; *Chapman* v. *Gray*, 15 Mass. R. 444. Whether a mortgage of a leasehold interest in land is redeemable .at common law, is not material, for our statutes are intended to cover the whole ground, so far as regards a right in equity to redeem, and it is apparent that they apply exclusively to what is technically called *real estate*, and not to a chattel interest in land. *Bartlett* v. *King*, 12 Mass. R. 545 ; *Commonwealth* v. *Cooley*, 10 Pick. 39 ; *Statutes* 1783, *c.* 37, § 6 ; 1783, *c.* 32 ; 1788, *c.* 51 ; 1785, *c.* 22, § 2 ; 1798, *c.* 77, § 1, 2 ; 1804, *c.* 103 ; 1815, *c.* 137 ; 1818, *c.* 98 ; 1821, *c.* 85. But if a leasehold interest is redeemable, there was no right to redeem the house ; which was a personal and not a real chattel. *Wells* v. *Banister*, 4 Mass. R. 514 ; 4 Dane's Abr. 197 ; *Ashmun* v. *Williams*, 8 Pick. 402 ; *Woodruff* v. *Halsey*, ibid. 333 ; *Marcey* v. *Darling*, ibid. 283. The mortgaged premises became forfeited on non-payment of the money, without any act of the plaintiffs to take possession, for the legal property had passed, subject to be divested by an act on the part of Shattuck. Yelv., *Homes* v. *Crane*, *Parks* v. *Hall*, and 2 Bigelow's Dig. before cited. From being a mortgager or *quasi* tenant for years, not liable to rent, Shattuck became a tenant at will, and as such chargeable with a reasonable rent. There was an occupancy by Shattuck, not personally, but by his tenant Fletcher ; who cannot dispute Shattuck's title, but must pay him the rent agreed for, and therefore cannot be compelled to pay it over again to the plaintiffs. *Watertown* v. *White*, 13 Mass. R. 477.

On the part of Shattuck it was said, that the relation of landlord and tenant does not exist in this case. The parties are adverse claimants of the same property, and the real question between them is the question of title ; which cannot be tried in an action of assumpsit. 3 Stark. Ev. 1513 ; *Codman* v. *Jenkins*, 14 Mass. R. 96 ; *Hildreth* v. *Thompson*, 16 Mass. R.

191 ; *Allen* v. *Thayer*, 17 Mass. R. 299 ; *Henwood* v. *Cheese-man*, 3 Serg. & Rawle, 500 ; *Smith* v. *Stewart*, 6 Johns. R. 46. Nor will assumpsit lie against one man for use and occupation by another, unless such occupation was permitted by the plaintiff upon the defendant's request. *Naish* v. *Tatlock*, 2 H. Bl. 323.

The plaintiffs, being mortgagees, are not entitled to rent until actual entry, or, in the case of a chattel, actual possession. *Fitchburg Man. Co.* v. *Melven*, 15 Mass. R. 268 ; *Gibson* v. *Farley*, 16 Mass. R. 280 ; *Wilder* v. *Houghton*, 1 Pick. 87. Here there has been no actual possession by the plaintiffs under the mortgage. Shattuck was entitled to the possession by the terms of the mortgage, and his letting the premises to Fletcher was not a wrong upon the plaintiffs. *Newall* v. *Wright*, 3 Mass. R. 152.

If Shattuck is a tenant, he is tenant only upon the same terms as to rent, as before the expiration of the four months specified in the mortgage. No new contract has been made.

*In reply* it was denied that the facts in the case show either an adverse claim of title by Shattuck previously to the commencement of the suit, or that the suit was brought for the purpose of trying the title ; one or the other or both of which are necessary to the application of the principle and authorities adduced on the part of Shattuck.

In opposition to the remark, that Shattuck was not liable because he did not occupy personally, the plaintiffs referred to 3 Stark. Ev. 1512, and *Bull* v. *Sibbs*, 8 T. R. 327.

In the action against Fletcher, the plaintiffs contended, first, that they had a possessory title in themselves. 1. When this action was commenced, they were absolute owners of the *locus in quo*. Or, 2. after maturity of the note the license to Shattuck to remain in possession was at an end, and the plaintiffs, as mortgagees, had an immediate right of entry. Nor was this right affected by the tender made after condition broken. *Maynard* v. *Hunt*, 5 Pick. 243.

Secondly, there was a wrongful entry or retaining of possession by the defendant. By entering without the permission of the plaintiffs as mortgagees, he became a trespasser. *Keech* v. *Hall*, 1 Doug. 21. By retaining possession after reasonable